1

2

3

4

5

6

7

8               IN THE UNITED STATES DISTRICT COURT

9             FOR THE EASTERN DISTRICT OF CALIFORNIA

10   THOMAS BOTELL, et al.,

11            Plaintiffs,                No. CIV S-11-1545 GEB GGH

12       vs.

13   UNITED STATES OF AMERICA,

14            Defendant.              ORDER

15   _____/

16            Plaintiffs' motion to compel further discovery responses was originally noticed for

17   hearing on August 23, 2012.  Based on the parties' failure to comply with E.D. Local Rule 251

18   and in particular defendant's failure to comply with discovery rules in general, the court vacated

19   the hearing, and directed the parties to meet and confer in person and file a joint statement that

20   complied with the Local Rules.  The matter was continued, and after an extension of time, was

21   heard on September 13, 2012.  Steven Campora appeared for plaintiffs.  Earlene Gordon

22   represented defendant.  After reviewing the joint statement filed September 7, 2012, and having

23   heard oral argument, the court now issues the following order.

24   BACKGROUND

25            This is a wrongful death and personal injury action, filed June 8, 2011.  Plaintiffs

26   are the Botell family, who allege that while visiting Lassen Volcanic National Park ("LAVO") on

1

July 29, 2009, children Tommy and K.B. Botell were sitting on a mortared rock wall to rest during a hike, when it gave way and rolled downhill, causing Tommy's death and injuring K.B. Plaintiffs are K.B., her sister B.B., through their guardian ad litem, Jennifer Botell, who were present and their parents, Thomas and Jennifer Botell, who were also present at the incident.  The complaint alleges wrongful death, personal injury - negligence, and negligent infliction of emotional distress.

DISCUSSION

Plaintiffs seek further responses to sets one and two of their Requests for Production of Documents ("RFPs").  The parties have now filed a joint statement.[1]  Plaintiffs claim that even though there have been further meet and confers, defendant has still failed to provide a complete production, and has not provided any declaration outlining the effort taken to locate and preserve the requested discovery.

Defendant, on the other hand, claims that in the last two weeks, since their (belated) in-person meeting on August 23, 2012, defendant has produced more than 2000 pages of additional documents and videos requested by plaintiffs.  Defendant maintains that its objections to plaintiffs' broad and overreaching requests are appropriate.  Defendant also represents that an updated privilege log would be produced prior to the hearing.

I.  Boilerplate Objections Based on Privilege and Privilege Log

As a preliminary matter, many of defendant's original responses in regard to privilege were clearly inadequate.  Boilerplate objections based on overbreadth and privilege are not permissible.  Examples of responses to many of the RFPs are: "Defendant objects that this request is overbroad as to time, and seeks information protected by both the attorney-client and work product privileges.  Without waiving its objections, Defendant states that no non-privileged documents responsive to this request have been found;" "without waiving its objection,

---

[1]  Although the statement is 95 pages long with over 145 pages of exhibits, it contains no table of contents as required by E.D. Local Rule 133(k).

2

Defendant states that it is producing the requested documents," or "without waiving its

objections, Defendant states it is producing all non-privileged responsive documents, but with

redactions of Privacy Act material."

This type of response gives no indication as to which documents have been

withheld on the basis of privilege, which documents have been withheld on the basis of other

objections, and does not identify any privileged documents.

If defendant has an objection based on overbreadth, for example, defendant must

make such an objection, stand on it, and in so doing define in specific terms why the RFP is

overbroad.[2]  Documents for which a privilege is claimed must be identified at the time the

privilege is made so that the opposing party can determine what has not been produced.  Without

such identification, it cannot be determined whether defendant has responded in full.

It is somewhat of an urban legend that good lawyering always requires an

introductory, general assertion that information/materials subject to a privilege (whatever that

unidentified information or those materials may be) are not being utilized or produced.  Counsel

then believe they have protected their client by making the response unclearly based such that

additional information can later be produced, or have protected their client from having to

produce privileged information/material.  In fact, and in law, the opposite is true.  Unless there

really exists some information subject to privilege, *which should be then identified in a privilege

log*, one may not make the privilege assertion "just in case."  The party receiving such a response

is in the dark as to what may, or may not, actually have been withheld.  Assertion of privilege is a

serious matter.  If there is indeed no identifiable, privileged information/material, it is an abuse of

discovery process to suggest that such exists.  Counsel may well be limited at trial to the

information contained in a response, and belated, attempted introduction of new information

---

[2] A responding party may define what would not be overbreadth, produce in accordance with that determination, and contest any further production.  But at least the receiving party would understand what it has not received, and could seek a court order rectifying any inappropriate definition.

1   heretofore not produced under some rubric of "privileged" will not be permitted.  On the other

2   hand, assuming that some identifiable, privileged information exists, one does nothing to

3   preserve the privilege by simply setting forth a generalized, i.e., boilerplate, objection.  If the

4   privilege is worth preserving, it is worth being identified in a privilege log – and the Federal

5   Rules *require* such.  Fed. R. Civ. P. 26 (b)(5).  See also Eureka Financial v. Hartford Accident

6   and Indemnity, 136 F.R.D. 179 (E.D. Cal. 1991).  A specific log entry is necessary because there

7   is no realistic way of setting about to challenge on their merits mistaken, blunderbuss,

8   unidentified assertions of privilege.

9          Furthermore, privilege logs are due at the time a discovery response is made.  See

10  Fed. R. Civ. P. 26(b)(5) (requiring privilege log for withheld documents), and Fed. R. Civ. P.

11  34(b) (objections are due within 30 days).  While not many litigants will be overly incensed

12  about a privilege log not delivered until actual document production, at the very latest, privilege

13  logs should be delivered, or at least promised forthwith during the meet and confer process of a

14  discovery dispute.  Eureka v. Hartford Ins., 136 F.R.D. 179, 184 (E.D. Cal. 1991).  Under federal

15  law, improper assertions of privilege in the privilege log, or an untimely privilege log, may (but

16  not necessarily) result in waiver.  Burlington Northern & Santa Fe etc. v. U.S.D.C. Montana

17  (Kapsner), 408 F.3d 1142 (9th Cir. 2005).  The court has discretion in this regard.  United States

18  v. Construction Products Research, Inc. 73 F.3d 464, 473 (2nd Cir. 1996).  Privilege logs should

19  contain the following information: general nature of the document, the identity and position of its

20  author, the date of authorship, identity and position of recipients, location of the document, and

21  reason document was withheld.  W.W. Schwarzer, A.W. Tashima & J. Wagstaffe, Federal Civil

22  Procedure Before Trial § 11:1919.

23         Defendant made the representation at hearing that there were no documents

24  withheld by the United States or its Agency on the basis of attorney-client privilege or work

25  product immunity that pre-date the filing of the administrative tort claim, which was in about

26  October, 2010.  Defendant also represented that other than the three additional documents

4

1   identified in the most recently updated privilege log, dated September 12, 2012, no documents

2   were withheld on the basis of privilege post-filing of the administrative tort claim in this case.[3]

3       II.  Susan Dolan's Draft Reports (RFP 34)[4]

4           Plaintiffs claim that Susan Dolan, a Historical Landscape Architect with the U.S.

5   National Park Service, who testified that she found there were no footings under the wet

6   mortared walls that collapsed, also testified that she sent draft(s) of her report to Mr. Eagan, who

7   instructed her to take out the "strong statements" in regard to the condition of the Lassen Peak

8   Trail.  Plaintiffs claim that defendant has failed to produce any of Dolan's draft reports, or any

9   related writings, although defendant has now produced an email from Ms. Dolan to Darlene

10  Koontz, Louise Johnson, Sean Eagan, Stephanie Toothman and Kimball (LNU), dated September

11  17, 2009, with an attachment titled, "LAVO Trip Report 8_03_09-SD.doc."  (Ex. 21.)

12  According to plaintiff, defendant has not produced the attachment.

13          Defendant has now responded to this request by stating that the Dolan draft report

14  is no longer available, but other documents with the same content have been provided.  See

15  Dolan Decl. Ex. B.  This declaration does not state why the draft report is no longer available,

16  but does state that the email she sent on August 10, 2009 (attached as Ex. A) "shares the same

17  content as her draft report to Sean Eagan."  (Dkt. no. 54-3 at 2.)

18          At hearing, plaintiffs indicated the importance of the draft report, that Ms. Dolan

19  evaluated the site of the accident five days after it occurred and reported her findings in this

20  report created at that time.  Defendant indicated that a search for the draft was conducted by Ms.

21  Dolan, as well as the recipients of the draft report.  Defendant could not say when this draft was

22  deleted from the computers of these individuals or the extent of the search undertaken for hard

23

24      [3]  Because plaintiffs' counsel appeared to be satisfied with these representations and was
    not concerned with defendant's failure to further identify those documents for which privileges
25  were claimed post-accident, the undersigned will not further address this issue.

26      [4]  Plaintiffs' counsel was asked at hearing to clarify the issues remaining to be resolved.
    Only those RFPs raised at hearing will be addressed by this order.

1  copies.

2         Therefore, defendant shall provide declarations by Darlene Koontz and Louise

3  Johnson which detail the efforts they made in searching for this draft report, both in electronic

4  and hard copy form, and that they no longer have it.  A third declaration shall be provided by a

5  qualified IT specialist who shall set forth in detail the steps taken to search the computers of the

6  sender and recipients of this draft report, and that it no longer exists.  If a further responsive

7  document(s) is located, it (they) shall be produced at the time declarations are filed.

8         III.  Video by Kristin Ramsey (RFP 46)[5]

9          Plaintiffs state that defendant finally produced the video on August 23, 2012, but

10  it contains less than seven minutes of edited footage, which is far less than the three or more

11  hours of raw video taken by Ramsey on June 30, 2009, and referenced in LAVO Supervisory

12  Ranger Ron Martin's investigation.  Plaintiffs have multiple emails stating this video was

13  preserved, as well as an investigation report stating it was logged into evidence.

14         Defendant states only that the video was produced on August 23, 2012.

15  Defendant shall produce a declaration from a person with knowledge, stating that it could not

16  locate the approximately three plus hours missing portion of the video after a complete search

17  and that it no longer exists.  The declaration shall set forth the steps taken to locate the missing

18  footage, who had possession of the complete three hours of video and why they no longer have

19  possession of it.  If further responsive documents (videos) are located, they shall be produced at

20  the time declarations are filed.

21         IV.  Emails Not Produced (RFPs 30, 31, 35, 36, 37, 38)

22         Plaintiffs are aware that although defendant has produced over 7000 pages of

23  documents, there is a glaring lack of production of emails from defendant's agents and

24  employees.  Thus far, defendant has recently produced only emails to and from Sean Eagan.

25  _____

26         [5]  This video shows the condition of the trail less than one month before the accident.

1   Plaintiffs are aware these emails exist because they have been referenced in other emails that

2   were produced, and in depositions of Susan Dolan, and Louise Johnson, LAVO Chief of Natural

3   Resources.  RFPs 30, 31, 35, 36, 37 and 38 request "each and every writing" on a variety of

4   topics; therefore, plaintiffs argue, these emails should have been produced, including those from

5   Darlene Koontz, Joseph Pettegrew, Susan Dolan, Louise Johnson, and John Roth.

6           At hearing, defendant asserted that John Roth, Chief Ranger at LAVO, did not

7   only search for emails concerning Susan Dolan, but that he put in a variety of search terms.

8   Roth's declaration sets forth the efforts to locate emails in Sean Eagan's office and network

9   drives at LAVO, and Roth's coordination with officials and IT personnel at Bryce Canyon

10  National Park, where Eagan worked after he left LAVO, to search Eagan's computer at that park.

11  See Dkt. no. 54-3 at 5-9.  This declaration does not address any search for emails by the other

12  individuals named above.

13          Defendant also points to the declaration of Julie Nagle concerning the back up

14  policy for Lotus Notes emails.  (Dkt. no. 54-3 at 10-14.)  It states that "[b]ack-up emails are

15  retained for 30 days only, unless they are subject to a litigation hold notice or pertain to the BP

16  Gulf Oil spill."  (Id. at ¶ 3.)

17          Defendant shall provide a declaration setting forth the searches conducted to

18  locate physical and electronic copies of emails responsive to RFPs 30, 31, 35, 36, 37, and 38,

19  generated by or received by Darlene Koontz, Joseph Pettegrew, Susan Dolan, Louise Johnson,

20  and John Roth.  The declaration shall state the steps taken to locate these emails, whether any

21  such emails exist, and if not, a definitive statement that they no longer exist.  If further

22  responsive documents are located, they shall be produced at the time declarations are filed.

23      V.   Video and Still Images of Retaining Walls (RFP 2)

24          Remaining at issue from this RFP are photographs taken by NPS Employee Alan

25  Foster as referenced in his "Investigative Activity Report."

26  \\\\\

7

Defendant stated at hearing that it produced all photographs responsive to this request that it was able to locate in regard to Alan Foster and any other potential witnesses. Defense counsel reported that the day before the hearing they located additional photographs that were taken by LAVO Trail Crew Leader Joseph Pettegrew, and produced them to plaintiffs.

Defendant shall obtain a declaration by Mr. Foster which sets forth whether he or anyone else had possession of the photographs, and if so whom, details of the search undertaken to locate these photographs, whether to his knowledge the photographs are in existence, and if the photographs no longer exist, a definitive statement to this effect.

In regard to the 2002 Trail Condition Assessment Survey, defendant's argument that these videos and photos would be duplicative of those taken in 2009, which were already produced, is not well taken.[6]  At hearing, defendant stated that the digital photos of this survey were produced in the body of the report, and represented that it did not have the actual video. The two individuals who undertook the assessment were seasonal park employees in 2002, and are long gone and cannot be located.  Therefore, the court will not require a declaration as to the whereabouts of the video.

With respect to a trail inspection conducted in 2007, the report of this investigation, completed by employees of the state of California, contained photos and videos which were not produced by defendant.  Defendant shall not be required to locate the individuals employed by the State who conducted this inspection, but shall obtain a declaration from the pertinent person at its client Agency indicating the efforts undertaken to search for these photographs and videos, including where they have searched, and that they were unable to locate any of them.  If further responsive documents are located, they shall be produced at the time declarations are filed.

---

[6]  For example, a 2002 picture/video may have shown that the wall at issue, or similar walls, were in deplorable condition, noticeable to anyone who cared to look at them.  Such longstanding knowledge prior to the accident would certainly be probative to a number of issues.

VI.  <u>Cause Analysis (RFP 44)</u>

Plaintiffs seek all writings related to the Cause Analysis of the incident.  The "LAVO Environmental, Health and Safety Program, Superintendent's Policy Statement dated July 5, 2008," requires that defendant conduct a Cause Analysis for the type of incident giving rise to this litigation.  Defendant gave its typical response, that it was overbroad and called for documents protected by the attorney-client privilege and work product protection, and "no non-privileged document[s]" have been found.  Plaintiffs request that defendant supplement its response to affirmatively state whether any responsive documents existed but are now lost or destroyed or unequivocally state that no such analysis was conducted.

In the joint statement, defendant repeated the arguments set forth above, and added that a further updated privilege would be produced the week of the hearing.  It was not until the hearing that defendant finally and unequivocally stated that no Cause Analysis of the incident was ever performed, as indicated in the deposition testimony of Darlene Koontz.

This statement finally resolves the dispute over RFP 44.

VII. <u>Miscellaneous Orders</u>

At this juncture, the United States has purportedly been looking for documents for months, yet the undersigned, to the date of the hearing, does not have confidence that an organized, thorough search has been performed.  Rather, defendant's document production performance in these proceedings has been akin to a drop-by-drop water torture.  At some point, plaintiff must be protected from the United States' further belated production of pertinent documents.  The court now enters a preclusion order prohibiting the United States from presenting evidence in its case that had been requested by plaintiffs in the Requests for Production, but which has not been produced by the date of compliance with this order.

Of course, this preclusion order is pertinent to only half the problem.  The United States might shed no tears that certain, heretofore unproduced but responsive, documents would not see the light of day at trial.  In order to alleviate any misconception, despite the entry of this

preclusion order, the United States must produce all documents responsive to this order whether it might want to use them or not.  Plaintiff has not waived any motion to seek further sanctions regarding non-production of documents, or spoliation of documents.

CONCLUSION

Accordingly, IT IS ORDERED that:

1.  Plaintiffs' motion to compel further discovery responses, filed July 6, 2012, (dkt. no. 36), is granted as set forth above.

2.  Defendant shall file and serve all declarations as set forth herein, within fourteen days of the filed date of this order.  Further document production shall take place within fourteen days of the filed date of this order.

3.  The United States is precluded from presenting evidence in its case that had been requested by plaintiffs by the Requests for Production at issue herein, but which has not been produced within fourteen days from the filed date of this order.[7]

DATED: September 18, 2012

/s/ Gregory G. Hollows
UNITED STATES MAGISTRATE JUDGE

GGH/076
Botell1545.mtc.wpd

---

[7]Of course, no duplicative re-production need be made for those documents already produced.