IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

THOMAS BOTELL, et al.,

      Plaintiffs,                  No. CIV S-11-1545 GEB GGH

    vs.

UNITED STATES OF AMERICA,

      Defendant.                ORDER

_____/

        Previously pending on this court's calendar for November 9, 2012 was plaintiffs' ex parte application for protective order, filed October 30, 2012. By order of October 31, 2012, the government was directed to file a response to plaintiffs' ex parte application by November 7, 2012, and the matter was set for hearing on November 9, 2012. Having heard oral argument and reviewed the papers in support of and in opposition to the ex parte application, the court now issues the following order.

        Plaintiffs request a protective order to prevent concealment and destruction of evidence, tampering and intimidating of witnesses, ex parte communication with Gene Compton or Jessica Compton on any issue relating to the alleged spoliation of evidence or tampering with witnesses until plaintiffs have conducted their depositions, and that neither Darlene Koontz nor John Roth attend the depositions of Gene Compton or Jessica Compton.

1    In support of their application, plaintiffs have produced a sworn statement by
2 Gene Compton, a former seasonal employee at Lassen Volcanic National Park ("LAVO")
3 regarding shredding of documents by John Roth, Chief Ranger at LAVO, as witnessed by his
4 wife, Jessica Compton, an employee at LAVO who works with John Roth.  Plaintiffs have also
5 produced various deposition transcripts and communications pertinent to their claims of prior
6 acts of misconduct by individuals affiliated with LAVO and/or defendant.
7    Plaintiffs' counsel alleges that on September 26, 2012, he received a voicemail
8 from Gene Compton.  Based on their ensuing conversation, as well as a statement[1] made by Gene
9 Compton to a private detective retained by plaintiffs' counsel, plaintiffs were made aware that
10 Mr. Compton's wife, Jessica, was instructed to shred documents by John Roth which she had
11 previously collected under his instruction. (Pls.' App., Ex. A.)  She refused, stating that she
12 would not shred documents unless she saw something from the court.  Mr. Roth then shredded
13 the documents himself.  Mr. Compton went to the recycling bins at the park and witnessed
14 enough shredded documents to fill two large 15 gallon garbage bags. (Id. at 13-14.)  This
15 statement also indicates that the Comptons called and left a message for a "federal lawyer" to
16 report this incident, but never received a return call. (Id. at 19.)
17    Plaintiffs also request a protective order based on Jessica Compton's perceived
18 poor treatment by John Roth, based on the statement of Mr. Compton.  This statement indicates
19 that since Jessica Compton refused to shred documents, she has been "harassed" by John Roth.
20 (Id. at 12.)  According to the statement, during Mrs. Compton's pregnancy, although she
21 presented a doctor's note to be off work, Mr. Roth required her to get three more doctor's notes.
22 (Id.)  Gene Compton described Mr. Roth's behavior as "very passive aggressive." (Id.)  Plaintiffs
23 characterize this behavior as witness tampering.
24 \\\\\

---

[1] Most of the statement is hearsay.

2

1  Defendant filed a response, accompanied by various declarations, including that of
2  John Roth.  Mr. Roth's declaration explains that none of the documents shredded were originals,
3  and they were shredded because they were either not responsive to the discovery requested, were
4  outside of the stated time frame of the requests, or were duplicative.  (Roth Decl. ¶¶ 21, 22; dkt.
5  no. 64-2.)  Furthermore, Mr. Roth explains that the shredded documents at issue were not taken
6  to the recycling bin where Gene Compton witnessed shredded documents, but if Roth had found
7  it necessary to empty the shredder, he would have taken the shredded documents to a different
8  location.  (Id. at ¶¶ 23, 24.)  The amount of shredding witnessed by Gene Compton was not
9  accurate, therefore, and Mr. Roth states he shredded only about 100-200 pages.  (Id. at ¶ 20.)

10  In regard to Gene Compton's statement that he and his wife left a phone message
11  for a "federal lawyer," defense counsel states that Mr. Compton's statement is too uncertain and
12  unspecific to warrant an accusation against defense counsel of not returning a phone call or of
13  having knowledge of any misconduct.  The declaration of Earlene Gordon states that she has
14  never received any messages from either of the Comptons.  (Def.'s Ex. A, ¶ 7.)

15  In opposition to the claim of harassment of Jessica Compton by John Roth,
16  defendant argues that Jessica Compton's refusal to shred occurred on March 21, 2012.  Mrs.
17  Compton is still employed by LAVO, and there is no evidence that her job is in jeopardy.
18  Furthermore, she obtained all the leave she requested during her pregnancy.  The declaration of
19  John Roth indicates that Mrs. Compton requested leave three times, of which Mr. Roth only
20  requested further information pertaining to one of the times, wherein she was unable to drive
21  long distances after reaching 36 weeks of pregnancy.  She produced a further doctor's note and
22  Mr. Roth granted this request.  (Roth Decl., ¶ 29.)  Mr. Roth has had no contact with Mrs.
23  Compton since October 15, 2012, when she started her maternity leave.  (Id. at ¶ 30.)

24  Much of the evidence submitted by plaintiffs pertains to past alleged misconduct
25  by defendant or its affiliates, which has flavored plaintiffs' opinion of the meaning of the recently
26  discovered shredding.  The court will not delve into all the alleged past acts of misconduct, as

they have been addressed for the most part in prior discovery proceedings. Although such alleged activity can create various scenarios, and different kinds of inferences can be drawn from them, such information may be relevant for impeachment at trial, but is not sufficient to require an order for defendant to refrain from destroying documents which creates the impression that defendant has already destroyed pertinent documents in this case. Moreover, there is simply not sufficient evidence of current misconduct based on the statement submitted by Gene Compton to warrant a protective order of this sort. Since the parties are already under an obligation to follow the law, the court will not further order a prohibition from secreting and destroying evidence.

Furthermore, the court finds that John Roth's actions in regard to Jessica Compton do not amount to tampering and harassing a witness, and will not order defendant and its agents to refrain from these activities which are already prohibited under the law. Therefore, a protective order as to plaintiffs' first and second requests, (dkt. no. 61 at 1), will be deferred at the present time, pending further inquiry and depositions in this case.

As to the other allegations, the court has weighed the sworn statement of Gene Compton against the declarations of John Roth and Attorney Gordon, and finds that a request for a protective order is reasonable as to the third and fourth requests, to prevent communication with the Comptons until after their depositions, and to prevent Ms. Koontz and Mr. Roth from attending the Compton depositions. Such a protective order will not prejudice the government.

Therefore, IT IS ORDERED that:

1. Plaintiffs' ex parte application for protective order, filed October 30, 2012, (dkt. no. 61), is granted in part and denied in part.

2. The United States, its employees and attorneys, shall not communicate with Gene and Jessica Compton on any issue related to plaintiffs' spoliation claims or alleged intimidation, and so forth, of Gene or Jessica Compton, until such time as plaintiffs have completed their depositions of these witnesses.

\\\\\

3. Darlene Koontz and John Roth shall not attend the depositions of Gene Compton or Jessica Compton.

DATED: November 19, 2012

/s/ Gregory G. Hollows
UNITED STATES MAGISTRATE JUDGE

GGH/076
Botell1545.exp2.wpd