IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

THOMAS BOTELL, et al.,

        Plaintiffs,                No. 2:-11-cv-1545 GEB GGH

    vs.

UNITED STATES OF AMERICA,

        Defendant.               ORDER and MEMORANDUM

_____/

        Previously pending on this court's law and motion calendar for January 17, 2013, was Plaintiffs' motion to compel depositions of four witnesses: Sean Eagan, Lassen former Volcanic National Park ("LAVO") environmental protection specialist, and further depositions of: Darlene Koontz, LAVO Superintendent, John Roth, LAVO Chief Ranger and Collateral Duty Safety Officer, and Joseph Pettegrew, former LAVO Trail Crew Leader. Steven Campora appeared for plaintiffs. J. Earlene Gordon represented defendant. After reviewing the joint statement filed January 10, 2013, and having heard oral argument, the court now issues the following order.

INTRODUCTION AND BACKGROUND

        There is no need to detail the background of the case in detail, as these facts are well known to all concerned. Suffice it to say that the case involves in the main the alleged

1

wrongful death of a child occasioned by the collapse of a retaining wall on a trail in the Lassen National Park.  The factual issues surround the maintenance of the trail, or lack of it, and whether defendant's personnel should have foreseen the collapse of the wall and taken measures to not let it happen.  The usual underlying issue of who knew what, when, is very much an issue in this case.

Plaintiffs contend that defendant has refused to produce Mr. Eagan for deposition without any justification.  Since he resides in American Samoa, plaintiffs had offered to fly there to depose him or split the costs to fly Mr. Eagan here, but defendant refused.  Plaintiffs contend that Eagan is a key witness who was intimately involved in matters pertaining to this case.

Plaintiffs also seek further depositions of witnesses Koontz, Roth and Pettegrew based on subsequent production of relevant documents and allegations of misconduct and spoliation of evidence made known to plaintiffs after their initial depositions took place.

Defendant contends that plaintiffs have exceeded the number of depositions permitted under the Federal Rules, and they could have deposed Mr. Eagan earlier this year when he was in the continental United States but failed to do so.  Defendant disputes that he is a key witness or is intimately familiar with matters in this case.  In regard to the three other witnesses already deposed, defendant contends that plaintiffs chose the order of their discovery and now seek to recover from a poor strategic decision they made.

By order of January 18, 2013, based on letters submitted after hearing by both parties concerning Sean Eagan's deposition, the undersigned reiterated that no formal order had been issued regarding this deposition, but the court had made only a tentative ruling at hearing that the parties should prepare the logistics for this deposition.  In regard to the request for further depositions of Ms. Koontz and Mr. Roth, the undersigned ordered that they were to be taken by the current discovery cutoff of February 1, 2013, but that their testimony would be limited to the issue of shredding of documents only.  The court directed that the further deposition of Joseph Pettegrew would not be permitted.

DISCUSSION

    A.  Sean Eagan's Deposition

Compelling, or not, the Eagan deposition involves three somewhat overlapping issues: its importance in overriding the agreement of counsel as to the number of depositions, who was "at fault" for not having the Eagan deposition taken long before he left the country, and the logistical difficulties involved in deposing a person residing far away from the forum, in this case American Samoa.

As to the first issue, the parties originally had an agreement to permit plaintiffs thirteen depositions, including that of Mr. Eagan, although defendant disputes that Eagan was on the original list. His deposition was originally noticed on February 10, 2012, but it was taken off at defense counsel's request. After some back and forth, Ms. Gordon informed Mr. Campora on May 14, 2012 that Mr. Eagan was going to be in the country in the first two weeks of June. Aside from the vagueness regarding the exact dates and location, this proposal was unacceptable to plaintiffs because they had learned of emails from Mr. Eagan and others which had not been produced as a result of their discovery requests. Mr. Eagan was also not on plaintiffs' list presented in July, 2012. In July, Ms. Gordon informed Mr. Campora of a number of Eagan emails which defendant had discovered on the computer he left in Utah, and it was not until September 4, 2012 that defendant produced the 830 emails. At this time plaintiffs became more aware of the significance of this witness.[1] The parties continued negotiation for Mr. Eagan's deposition, but defendant would not agree to pay for transportation to bring Eagan to the United States, and offered instead a deposition by phone. Plaintiffs formally noticed Eagan's deposition for a second time on November 14, 2012. Ms. Gordon never formally objected to the notice, but indicated she was checking on it, and then finally on November 30, 2012, instructed Mr. Campora to file a motion on the issue.

---

[1] Defendant also had not produced the 3.5 hours of video of the trail at issue at the time they first offered Mr. Eagan for deposition.

3

This history requires that plaintiffs be excused from the agreed-upon thirteen deposition limit. Mr. Eagan's true significance to the case did not become apparent until much later in the litigation, after his emails were discovered and produced. The Comptons coming forward regarding shredding of documents, and adding two depositions to plaintiffs' list, could not have been anticipated by plaintiffs. Mr. Eagan's involvement with the trail, video of the trail, communication to Dolan to take strong language out of the draft report pursuant to Koontz's request, retention of numerous emails on his computer in Utah, as well as other activities, all indicate a seemingly pervasive knowledge on the part of this deponent. The court finds this deposition to be sufficiently important to override the thirteen deposition limit.

Secondly, the court finds that no party is blameworthy for not taking the Eagan deposition while he was in the country last June. Defendant's document production, whether intentionally or unintentionally delayed, is either not plaintiffs' fault, or could not have been predicted. If Mr. Eagan resided in the contiguous United States, the timing of his deposition would not have created the conflict that it has. All of these mostly unforeseen circumstances do not place the fault at either party's doorstep. The United States did offer Eagan for deposition, albeit at inopportune times.

The logistical difficulties in deposing Mr. Eagan, who resides in American Samoa, far from this forum, require further analysis.

> Only a party to litigation may be compelled to give testimony pursuant to a notice of deposition. If the party is a corporation, it may be noticed pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, in which case it must designate an officer, director, or managing agent to testify on its behalf. Alternatively, the party seeking the deposition may identify a specific officer, director, or managing agent to be deposed and notice that person under Rule 30(b)(1). The testimony of such a person will be binding on the party. However, a corporate employee or agent who does not qualify as an officer, director, or managing agent is not subject to deposition by notice. See GTE Products Corp. v. Gee, 115 F.R.D. 67, 68–69 (D.Mass.1987); Sugarhill Records Ltd. v. Motown Record Corp., 105 F.R.D. 166, 169 (S.D.N.Y.1985). Such a witness must be subpoenaed pursuant to Rule 45 of the Federal Rules of Civil Procedure, . . .

1  U.S. v. Afram Lines (USA), Ltd., 159 F.R.D. 408, 413 (S.D.N.Y. 1994).  "Under Rule 30(b)(1),
2  any person can be deposed, including 'any person associated with [a] corporation and acquainted
3  with the facts.'" Calixto v. Watson Bowman Acme Corp., 2008 WL 4487679, *2 (S.D. Fla. Sept.
4  29, 2008), *quoting* 8A Wright, Miller & Marcus, Federal Practice and Procedure, § 2103 (1994 &
5  West Supp. 2008).

6  　　　　　The significance of the determination that a deponent is an officer, director, or
7  managing agent of a corporation or *other organization* that is a party to the suit is that Rule
8  37(d)(1) permits dismissal of the action, or entry of a default judgment, if such a deponent fails to
9  appear for deposition after being served with a proper notice.  8A Wright et al, Federal Practice
10  and Procedure § 2103 (2012) (emphasis added).  It is also significant in determining the location
11  of the proposed deposition.

12  　　　　　Here, although the government may be analogized to a corporation, it is somewhat
13  different from a corporation in that, although its principal place of business might be
14  Washington, D.C., it operates everywhere in the United States.  The finding that the government
15  is an "other organization" is especially significant here, where the logistics of this deposition,
16  including the location, and which party must pay the expense of transportation, is an issue.

17  　　　　　Pursuant to Fed. R. Civ. P. 32(a)(3), an adverse party may introduce into evidence
18  against the corporate party for any purpose the deposition of "anyone who at the time of taking
19  the deposition was an officer, director, or managing agent of a public or private corporation,
20  partnership, or association." Id.  The determination of whether a deponent is an officer, director,
21  or managing agent is determined at the time of the deposition and not before, as referenced in
22  Rule 32(a)(3) and inferred from Rule 37(d). "The purpose is to protect the party from the
23  admissions of disgruntled former officers or agents."  The party seeking to compel the deposition
24  has the burden to show that the witness is a managing agent.  Id.  Nevertheless, the burden is a
25  modest one, with doubts to be resolved in favor of the party moving to compel the deposition.
26  Calderon v. Experian Information Solutions, Inc., ___ F.R.D. ___, 2012 WL 5377799, *2 (D.

Idaho Oct. 31, 2012).  See also In re Honda American Motor Co., Inc. Dealership Relations Litn., 168 F.R.D. 535, 540 (D. Md. 1996) (at pretrial discovery stage, doubts regarding deponent's status as managing agent are resolved in favor of the examining party).

      The weight of authority is contrary to the government's position that a subpoena is required and that plaintiffs must travel to the location of the deponent and pay associated costs because Mr. Eagan is not merely a percipient witness.  The deposition of a specific officer or managing agent may be noticed pursuant to Fed. R. Civ. P. 30(b)(1).  1ST Technology, LLC v. Rational Enterprises LTDA, 2007 WL 5596705, *2 (D. Nev. Nov. 28, 2007); Playboy Enterprises Intern., Inc. v. Smartitan (Singapore) Pte. Ltd., 2011 WL 5529928, *1 (N.D. Ill. Nov. 14, 2011).  See Fed. R. Civ. P. 37(d)(1)(A)(i).  Depositions of officers, directors and managing agents, whether taken under subdivision (b)(6) or (b)(1) or Rule 30, are viewed the same way and both may be used against the corporate party at trial.  Cadent Ltd. v. 3M Unitek Corp., 232 F.R.D. 625, 628 (C.D. Cal. 2005).  Specifically, if a deposition of an officer or managing agent is noticed under Rule 30(b)(1), the corporation is compelled to produce the named managing agent, and a subpoena is not necessary.  Id. at 627 n. 1.  See also Felman Production, Inc. v. Industrial Risk Insurers, 2010 WL 5110076 (S.D. W. Va. Dec. 9, 2010) (finding that some potential 30(b)(1) deponents who were associates of the corporate plaintiff were managing agents); Calixto, 2008 WL 4487679 at *2-3 (utilizing similar analysis even though deposition was noticed under Rule 30(b(1)); Vision Center Northwest Inc. v. Vision Value LLC, 2008 WL 4276240 (N.D. Ind. Sept. 15, 2008) (same); Schindler Elevator Corp. v. Otis Elevator Co., 2007 WL 1771509, *2 (S.D.N.Y. Jun. 18, 2007) (same); Libbey Glass, Inc. v. Oneida, Ltd., 197 F.R.D. 342, 350-51 (N.D. Ohio 1999) (analyzing managing agent issue where notice of deposition brought under Rule 30(b)(1), and affirming in general that deponent not required to have formal association with corporation or even be associated with corporation at the time of his deposition to be a managing agent).

\\\\\

The analysis of whether Mr. Eagan is a managing agent of the United States requires analysis of several factors:

> "(1) whether the individual is invested with general powers allowing him to exercise judgment and discretion in corporate matters; (2) whether the individual can be relied upon to give testimony, at his employer's request, in response to the demand of the examining party; (3) whether any person or persons are employed by the corporate employer in positions of higher authority than the individual designated in the area regarding which information is sought by the examination; (4) the general responsibilities of the individual respecting the matters involved in the litigation."

Calderon, 2012 WL 5377799 at *2 (citing cases).[2]  Factors considered by other courts include: "whether the corporation has invested the person with discretion to exercise his judgment; (2) whether the employee can be depended upon to carry out the employer's directions, and (3) whether the individual can be expected to identify him or herself with the interests of the corporation as opposed to the interests of the opposing party." Id. (citations omitted.)

Of most importance to this analysis is that it be undertaken on an ad hoc basis, considering the facts of the particular case, and that the paramount test is whether the employee deponent identifies with the interests of the employer. Id. at *3.  The Calderon court noted that it is not a requirement that an employee be titled a "manager" in order to qualify as a managing agent, but the inquiry is rather whether "their duties and activities are closely linked with the events giving rise to the lawsuit." Id.  "[T]he term[ ] Managing Agent ... should not be given too literal an interpretation, and ... applications thereunder should be treated and determined on an ad hoc basis, dependent largely on the functions, responsibilities and authority of the individual involved *respecting the subject matter of the litigation.*" Kolb v. A.H. Bull Steamship Co., 31 F.R.D. 252, 254 (E.D.N.Y.1962) (emphasis in original).

\\\\\

---

[2] The Calderon court noted that the Ninth Circuit had not yet addressed the issue. Id.

In the instant case, Mr. Eagan was the LAVO Environmental Protection Specialist and was therefore involved in ensuring the park complied with federal law in certain respects, and engaged in fundraising to repair the trail during the time of the incident. He participated in videotaping the trail in June, 2009, thirty days before the accident, for the purpose of demonstrating the poor condition of the trail; however, Ms. Ramsey actually filmed the video and plaintiffs have not sought her deposition. Mr. Eagan was further engaged in bringing Susan Dolan, the NPS Historical Landscape Architect, to LAVO to inspect the trail after the accident to conduct a NHPA Section 110 assessment of the trail. It is true that Mr. Eagan is not alleged to have personal knowledge regarding the accident, and did not hike the trail with Susan Dolan. Plaintiffs have already deposed Ms. Dolan and David Harry, who did hike the trail with her. Ms. Dolan's assessment was completed within weeks after the accident. Her assessment included strong statements which Ms. Koontz ordered removed from the draft report. It is true, as defendant asserts, that Ms. Dolan and Ms. Koontz were already deposed regarding the draft report; however, the draft report was not produced in this case and has been destroyed. Therefore, Mr. Eagan's deposition may provide other insight into the draft since he was the one who requested that Ms. Dolan remove the strong language from the report. Also pertinent for deposition is Mr. Eagan's statement to Ron Martin, LAVO Supervisory Park Ranger, stating that "no one ever thought it would be possible to get the superintendent [Koontz] to close the trail, so no one ever brought it up." (Campora Dec., Ex. R at 3.) Mr. Eagan related his knowledge of the dangerous condition of the trail before the incident and wrote numerous emails concerning the trail and video of the trail after the incident.

Mr. Eagan is currently working for defendant under the Department of the Interior as the Resources Management Lead for the National Park of American Samoa. Both Mr. Eagan's former job and his present position provided him with the discretion to exercise his judgment, in support of the first factor. This knowledge and his activities also reflect his responsibilities concerning the matters raised in this litigation, which is relevant to the fourth

factor. Despite Mr. Eagan's comments and actions addressing the poor condition of the trail, he was promoted to another position with the Forest Service at Bryce Canyon National Park, and then moved up to a position with the National Park of American Samoa, all of which reflect the level of reliance placed upon him by his employer, and the expectation that he identify himself with the government. These facts indicate that Mr. Eagan can be relied on to give testimony at defendant's request, in regard to the second factor. There are no facts indicating that this deponent would be unwilling to provide testimony. In regard to the third factor, it is true that there are other individuals in higher positions of authority than Mr. Eagan concerning the subject matter for which testimony is sought; however, Mr. Eagan would provide a point of view different than the higher level employees, as recounted in his statement to Ronald Martin, Supervisory Park Ranger. (Campora Dec., Ex. R.) In any event, it is not required that all factors work in favor of finding the proposed deponent to be a managing agent.

In Tomingas v. Douglas Aircraft Co., 45 F.R.D. 94, 96-97 (S.D.N.Y. 1968), two engineers were found to be managing agents because although they might not be "'managing agents' in the course of their everyday duties for the defendant corporation, they [were] 'managing agents' for the purpose of giving testimony regarding the accident investigation, a most relevant aspect of this litigation." As in Tomingas, although Mr. Eagan may not be a higher-up managing agent in the course of his everyday duties for defendant, he is a managing agent for the purpose of providing testimony regarding the LAVO trail condition in and around the time of the accident, which is extremely relevant to this litigation. See also Kolb, 31 F.R.D. at 254 (employee found to be managing agent because even though he was under a higher authority, he had authority concerning the subject matter of the litigation); Sugarhill Records, 105 F.R.D. at 171 (finding employee managing agent because she was only employee with knowledge of events precipitating lawsuit); Alcan Int'l Ltd. v. S.A. Day Mfg. Co., Inc., 176 F.R.D. 75, 79 (W.D.N.Y. 1996) (compelling deposition of retired officer who had unique knowledge of matters involved in litigation); Calgene, Inc. v. Enzo Biochem, 1993 WL 645999,

at *8 (E.D. Cal. Aug. 23, 1993) (undersigned found that inventor of patent who was also a consultant and advisory board member was managing agent because he had "power regarding the subject matter of the litigation").

Finally, it is not lost on the undersigned that the deposition may well be a very necessary trial deposition as plaintiffs have no way of compelling Eagan's appearance at trial. Therefore, Sean Eagan's deposition will be permitted despite the prior agreement for 13 depositions.

The aforementioned authority regarding managing agents applies equally to deponents who reside overseas. Calderon, 2012 WL 5377799 at *2. Courts have wide latitude over the location of depositions. Id. at *7. The location of the deposition lies within the court's discretion. Sugarhill Records, 105 F.R.D. at 171. Each motion should be considered on its own facts and equities. Tomingas, 45 F.R.D. at 97. Depositions under Rule 30(b)(1) generally are taken at the corporation's principal place of business unless unusual circumstances exist. Recaro North America, Inc. v. Holmbers Childsafety Co. Ltd., 2011 WL 5864727, *1 (E.D. Mich. Nov. 22, 2011). Nevertheless, "[c]orporate defendants are frequently deposed in places other than the location of the principal place of business, especially in the forum, for the convenience of all parties and in the general interests of judicial economy." Sugarhill Records, 105 F.R.D. at 171. In fact, managing agents who are foreign nationals may be compelled to travel to the United States to attend their depositions. Honda American, 168 F.R.D. at 541. For purposes of convenience, a deposition may also be taken at the deponent's residence or place of business. Stone v. Morton Intern., Inc., 170 F.R.D. 498, 504 (D. Utah 1997).[3] In Stone, the deponent

---

[3] A deposition may be taken in a foreign country under the following terms:

    (1) In General. A deposition may be taken in a foreign country:
    (A) under an applicable treaty or convention;
    (B) under a letter of request, whether or not captioned a "letter rogatory";
    (C) on notice, before a person authorized to administer oaths either

resided in a Germany, but since he traveled to Chicago "more frequently" than elsewhere in the United States, the court considered requiring his deposition there, upon a proper showing. Id.

In Malletier v. Dooney & Bourke, Inc., 2006 WL 3476735, *16 (S.D.N.Y. Nov. 30, 2006), the deponent resided and worked in Italy. Although he traveled to the United States once or twice a year, it was unlikely he would be back in the states before the discovery deadline. The court noted that general rule that depositions should be conducted where the employee works, and concluded that there was no reason to deviate from that presumption. Therefore, the deposition was ordered to take place in Italy.

An important consideration in taking a corporate deposition is expense. Cadent, 232 F.R.D. at 628, citing Fed. R. Civ. P. 26(c). Based on that consideration, the court can deviate from the principal place of business and order a deposition to be taken in the forum or elsewhere. Id. at 628-29. Factors to consider in making this determination include the "location of counsel for the parties in the forum district, the number of corporate representatives a party is seeking to depose, the likelihood of significant discovery disputes arising which would necessitate-resolution by the forum court; whether the persons sought to be deposed often engage in travel for business purposes; and the equities with regard to the nature of the claim and the parties' relationship." Id. at 629.

Here, the government has indicated that Sean Eagan is not planning a visit to the continental United States anytime soon. Although the court may consider the financial position of the deponent and the corporate party in determining a location for deposition; see Cadent, 232 F.R.D. at 629; defendant has not submitted a declaration attesting to expense or undue burden, only that the government would not agree to contribute to the cost. (Gordon Dec., ¶ 9,

---

        by federal law or by the law in the place of examination; or
        (D) before a person commissioned by the court to administer any
        necessary oath and take testimony.

Fed. R. Civ. P. 28(b).

Ex. 1-F.) Plaintiffs, in a letter submitted to the court on January 18, 2013 but not filed, attached emails indicating their offer to share in the cost of bringing Mr. Eagan to Hawaii, and in particular to pay for his airfare to Hawaii.[4] Nevertheless, because Mr. Eagan is a managing agent, defendant is responsible for producing him for deposition at defendant's expense. The court is mindful that travel from Pago Pago to the United States is extremely costly. Therefore, defendant is given the option to produce Mr. Eagan either in Honolulu or Sacramento for his deposition. Defendant is responsible for his travel expenses.[5] Plaintiff's counsel must pay for his own expenses.

The district court has consented to extending the discovery cutoff of February 1, 2012 to March 15, 2013 for the sole purpose of taking the Sean Eagan deposition. That order was filed on January 24, 2013 (docket # 84).

B. Further Depositions of Koontz, Roth and Pettegrew

Plaintiffs formally noticed further depositions of these witnesses on October 19, 2012, for November 13-14, 2012. Defendant refused to produce them, relying on Fed. R. Civ. P. 30(a)(2)(A)(ii), which requires leave of court if a party seeks to depose someone who has already been deposed in the case.

The court's January 18, 2013 order permitted further depositions of John Roth and Darlene Koontz, on the topic of shredding documents only, to be completed prior to the February 1, 2013 discovery cutoff. The order noted that further deposition of Joseph Pettegew would not be ordered. This order explains the reasoning behind that ruling.

Plaintiffs cite to Kress v. Price Waterhouse Coopers, in support of their request for further depositions.

---

[4] Mr. Campora's January 18, 2013 email to Ms. Gordon proposed paying for Eagan's plane ticket to Hawaii if the government would pay for his hotel accommodations. The estimated cost for a round trip plane ticket from Pago Pago to Honolulu was about $1,100 to $1,300.

[5] Plaintiffs may offer to pay any portion of these expenses.

12

> In order to take a deposition of a deponent who has already been deposed, leave of court is required, and "the court must grant leave to the extent consistent with Rule 26(b)(2)." Fed.R.Civ.P. 30(a)(2)(A)(ii). Repeat depositions are not favored, except in certain circumstances, some of which include a long passage of time with new evidence, or where an amended complaint has added new theories. Graebner v. James River Corporation, 130 F.R.D. 440, 441 (N.D.Cal.1990). "Good cause" for an order exists where new claims or defenses have been added, Collins v. Int'l Dairy Queen, 189 F.R.D. 496, 498 (M.D.Ga.1999); new parties have been added, Christy v. Pennsylvania Turnpike Comm'n, 160 F.R.D. 51, 52–53 (E.D.Pa.1995); and new documents have been produced, Miller v. Federal Express Corp., 186 F.R.D. 376, 389 (W.D. TN 1999), Harris v. New Jersey, 259 F.R.D. 89, 94–95 (D.N.J.2007). W.W. Schwarzer, A.W. Tashima & J. Wagstaffe, Federal Civil Procedure Before Trial § 11:1374. "Courts may limit the scope of the second deposition to matters not covered in the first deposition ." Id.

Kress v. Price Waterhouse Coopers, 2011 WL 5241852, *1 (E.D. Cal. Nov. 1, 2011).

Plaintiffs argue that since the original depositions of Koontz, Roth and Pettegrew, defendant has produced more than 7,000 pages of documents and numerous videos. Of those, 3,000 pages were produced only after plaintiff's motion to compel. Plaintiffs cite to Miller v. Federal Express, 186 F.R.D. 376, 389 (W.D. Tenn. 1999), wherein the court held that production of an additional 500 pages of documents constituted grounds for an additional deposition. Plaintiffs also urge further depositions based on two instances of shredding of documents, by LAVO Chief of Maintenance Daniel Jones, and by Ranger Roth, after these depositions were taken, and the events surrounding that shredding, which also apparently involved Roth's meeting with Koontz prior to his shredding.

Plaintiffs assert that according to the Fed. R. Civ. P. 26(b)(2)(C), leave for second depositions must be granted in this case because the deposition questioning will be based on evidence that had not been produced at the time of the first depositions, based on defendant's conduct in this litigation, including delay in production and alleged destruction of evidence.

Defendant cites Bookhamer v. Sunbeam Products, Inc., 2012 WL 5188302, *3 (N.D. Cal. Oct. 19, 2012), for the proposition that where a party makes a tactical decision that

13

results in a disadvantage, it does not warrant reopening a deposition.  Here, defendant argues that plaintiffs decided to take these depositions early in the litigation, before they requested documents they now wish to examine the deponents about, and this strategy does not constitute good cause.  Other than allegations relating to the spoliation motion, which are unfounded according to defendant, plaintiffs can point to no specific document produced after the depositions that makes their testimony indispensable.  Defendant further contends that Jessica Compton's deposition does not support plaintiffs' request because she admitted that she does not know which documents Roth shredded.

Further depositions of Ms. Koontz and Mr. Roth were ordered on the topic of shredding documents only because plaintiffs did not provide sufficient reason to permit deposition on other topics.  Defendant's delay in production of documents and videos in general does not justify further deposition of these deponents on *any* topic.  Plaintiffs did choose to conduct depositions early, as defendant argues, which was arguably a chosen strategy.  Counsel may well have chosen to take the early depositions before defenses had solidified, and prior to the time the deponents had time to ponder the significance of past statements.  Although plaintiffs argue that defendant's Rule 26 initial disclosures were "wholly inadequate," plaintiffs have provided no specific details on this point.  Mr. Roth's shredding of documents after his deposition was taken, on the other hand, provides a specific reason for his further deposition, as does his meeting with Ms. Koontz immediately prior to his shredding provide a specific justification for her re-deposition.

The further deposition of Mr. Pettegrew was not ordered because plaintiffs did not come forward with sufficient reason to re-depose him.  Further testimony concerning the Comptons' report of the Roth shredding to this witness, who promised to call the U.S. Attorney, but after doing so, received no response to his several messages, is not good cause for further testimony of this witness.

\\\\\

CONCLUSION

For reasons stated at hearing, IT IS ORDERED that:

1. Plaintiffs' amended motion to compel deposition and further testimony, filed December 12, 2012, (dkt. no. 73), is granted in part and denied in part as set forth herein.

2. Pursuant to the district judge's order extending discovery for the sole purpose of taking Sean Eagan's deposition, plaintiffs shall take the Eagan deposition in accordance with the terms outlined herein, prior to the extended discovery cutoff of March 15, 2013.

3. As previously ordered, the depositions of Koontz and Roth were to be taken prior to the scheduled discovery cutoff on the issue of shredding documents only; the further deposition of Pettegrew was denied in it entirety.

DATED: January 28, 2013

/s/ Gregory G. Hollows
UNITED STATES MAGISTRATE JUDGE

GGH/076
Botell1545.dep.wpd