UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS BOTELL, JENNIFER BOTELL, individually, and B.B. and K.B., minors, by and through their Guardian ad Litem, JENNIFER BOTELL,<br><br>    Plaintiffs,<br><br>    v.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | No. 2:11-cv-01545-TLN-GGH<br><br>**ORDER** |

This matter is before the court on the parties' cross motions for summary judgment.[1] (See Pls.' Mot. for Summ. J., ECF 92; Def.'s Opp'n and Cross Mot. for Summ J., ECF 102.) While visiting Lassen Volcanic National Park on July 29, 2009, minors Tommy Botell and K.B. were sitting on a mortared rock wall to rest during a hike. The mortared wall gave way and rolled downhill, causing Tommy's death and injuring K.B. Plaintiffs are K.B., her sister B.B., through their guardian ad litem, Jennifer Botell, their mother. Both Jennifer Botell and the plaintiffs' father, Thomas Botell, were present at the incident. Plaintiffs filed a wrongful death and personal

---

[1] **Error! Main Document Only.** The court heard oral argument on June 20, 2013. Steven Campora and Catia Saravia appeared for Plaintiffs; J. Earlene Gordon and Chi Soo Kim appeared for Defendant.

1

injury action under the Federal Tort Claims Act ("FTCA") on June 8, 2011.  The complaint alleges wrongful death, personal injury – negligence, and negligent infliction of emotional distress.

The FTCA is a congressional waiver of the federal government's sovereign immunity for various tort claims.  There are, however, a number of exceptions to this waiver.  One such exception is the "discretionary function exception," which divests district courts of jurisdiction over "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).  The sole issue presented by the parties' respective motions is a purely legal question: does the discretionary function exception to the FTCA apply in this case?[2]  Plaintiffs maintain that the exception is inapplicable to the facts of this case while Defendant contends that the exception is applicable, and the court must therefore dismiss this case for lack of subject matter jurisdiction.  For the reasons set forth below, Defendant's motion for summary judgment is DENIED and Plaintiffs' motion for summary judgment is GRANTED.

///

///

---

[2]  On March 20, 2013, the Honorable Gregory G. Hollows issued Findings and Recommendations on Plaintiffs' motion for sanctions under Federal Rule of Civil Procedure 37. Judge Hollows found that Defendant "purposely destroyed evidence in this case, specifically the retaining wall that caused Tommy Botell's death and injury to his sister, . . ." (ECF 91 at 1:23-24.)  Based on this finding, Judge Hollows recommended that Defendant be sanctioned for spoliation of evidence.  (Id. at 20:22-23.)  Specifically, the court recommended that the appropriate sanction for spoliation of evidence was that, "for all purposes in this case, . . . [D]efendant is deemed to have been negligent in causing the death of Tommy Botell and injury to [P]lainitff K.B."

On May 14, 2013, after a scrupulous, *de novo* review of the record and Judge Hollows' Finding and Recommendations, the court adopted the recommendation that Defendant be found negligent for causing the harm Plaintiffs allege because of spoliation of evidence.  The court notes, however, that it has not made any substantive finding that Defendant was actually negligent; Defendant is only deemed negligent as a sanction under Federal Rule of Civil Procedure 37 for its conduct in spoliation of evidence directly related to the death of the decedent and the injuries to Plaintiff K.B.  (ECF 106.)

///

## BACKGROUND[3][4]

On July 29, 2009, Plaintiffs visited the Lassen Volcanic National Park ("LAVO") with the intent of hiking toward the top of Mount Lassen on the Lassen peak trail. (Pls.' Statement of Undisputed Facts ("UF"), ECF 92-2, 1)  During the hike, Plaintiff K.B. and her brother, decedent Tommy Botell, sat on a mortared retaining wall to rest. (UF 3.)  The retaining wall subsequently gave way and began rolling downhill. (UF 4.)  The wall rolled over Tommy Botell, resulting in his death and the wall also injured Plaintiff K.B.  According to Jennifer Botell, both B.B. and K.B. witnessed the manner in which Tommy Botell sustained his fatal injuries.  (Decl. of Jennifer Botell, ECF 32-4 ¶¶ 4-8.)  At the time of the incident, decedent Tommy Botell was nine-years old and Plaintiff K.B. was thirteen.

Defendant does not dispute that they knew the retaining walls required heavy maintenance and that, prior to the incident, trail crew leader Joseph Pettigrew was concerned about the safety of LAVO employees and the safety of members of the public due to the dangers posed by the mortared retaining walls. (UF 10, 26.)  Defendant also does not dispute that park superintendent Darlene Koontz acknowledged that the deterioration of the rock was an issue for visitor safety, and that prior to the incident, the walls were deteriorating, and the water runoff was eroding the support for the walls. (Def.'s Resp. to Pls.' Statement of Undisputed Facts ("DRUF") at 24-25.)  Finally, Defendant does not dispute that a number of employees expressed concern about the safety of the retaining walls at LAVO. (See UF 31-38.)

LAVO is governed by its Environmental Health and Safety Program, which went into effect in 2008. (UF 47.)  LAVO superintendent Darlene Koontz reviewed and edited the safety

---

[3] The facts set forth herein are, for the most part, undisputed. In recounting the relevant facts, the court will cite to the parties' respective statements of undisputed facts and responses thereto. Moreover, where necessary, the court will cite to various deposition testimony lodged with the court, as well as declarations and exhibits attached thereto.

[4] Plaintiffs also filed a number of objections to the declarations submitted by Defendant. (See Pl.'s Objections, ECF 117-2.)  Because those declarations are immaterial to the resolution of the parties' motions, the objections are overruled as moot.

program prior to signing it into effect. (UF 49.) The goal of the park safety directives was to provide for the safety and health of the public. (DRUF 52.) The safety program provides that "facilities that are substandard and pose hazards to safety and/or health shall be closed, partially closed or use modified patterns pending correction." (LAVO Environmental Health and Safety Program, EX. P to Pls.' Mot. for Summ. J., ECF 92-8.)

The program also provides that, among other directives:

1. The Superintendent is responsible for assuring that inspections and hazard controls are conducted and documented; that proper analysis of identified hazards is carries out and that necessary abatement and follow-up is completely in a timely manner.

2. Inspections shall be conducted by persons specifically trained and with the technical competence needed to recognize hazards in the work place and general environment.

3. Specialized equipment necessary to conduct a thorough inspection shall be provided or otherwise available as necessary to meet local conditions. This equipment may be available from the Safety Office.

Regular inspection of work areas and visitor-use areas shall be completed and documented.

   a. An evaluation of the overall inspection program shall be conducted at least annually.

   b. All annual inspections shall be documented and abatement dates established in a written report prepared by the area inspector when an unsafe or unhealthful condition is detected. Copies of these reports shall be available for examination.

   c. The responsible supervisor, at least monthly, shall inspect all work areas. Frequency of inspection may increase depending on the hazard level of the work area or the operation. A blasting operation may require daily inspections as opposed to a monthly inspection of a warehouse.

   d. Hazards shall be abated in order of hazard priority. In instances where it is not possible to effect immediate correction, a written program shall be provided to the preserve Safety Officer together with the details of interim measures taken to protect employees or visitors. This is to be done on the inspection report.

   e. A notice of an unsafe or unhealthful working conditions that is in the imminent danger or serious danger category (Class A) will be drafted by

4

> the Team Manager and signed by the Superintendent and immediately posted at or near each place where such hazards are detected. Each notices shall remain posted until the danger has been abated.
>
> **Employees**
> All employees shall correct hazards, if possible, when they locate them. When unable to effect corrections, they should notify their supervisor, who shall correct the hazards and/or pass the information to the Division Manager, who will take appropriate actions. Hazards which cannot be corrected right away and pose a potential for personal injury and/or property damage should be blocked off, signed, barricaded or other action taken to keep an accident from occurring.
>
> **Maintenance**
> All facilities (e.g., buildings, roads, and trails) shall be designed with adopted national standard, codes and guidelines.
>
> - All facilities shall be maintained to be free of recognized hazards.
> - Facilities that are substandard and pose hazards to safety and/or health shall be closed, partially closed or use modified patterns pending correction.

(Id.)

Darlene Koontz admitted in her deposition that the safety policy required a mandatory "evaluation of the overall [safety] inspection program annually," and that abatement dates must be established in a written report. (Dep. of Darlene Koontz at 123:21-124:-19.) According to Koontz, this policy was mandatory. (Id.) Koontz also admitted that, in contravention of this policy, no LAVO employee ever conducted an evaluation of the inspection program. (Id. at 124:20-25.) Finally, Koontz conceded in her deposition that no abatement dates were ever established in a written report. (Id. at 125:1-13.)

## STANDARD

Summary judgment is appropriate when the moving party demonstrates no genuine issue as to any material fact exists, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis of its motion and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. Celotex

1  Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden
2  of proof at trial on a dispositive issue, a summary judgment motion may properly be made in
3  reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on
4  file.'"  Id. at 324.  Indeed, summary judgment should be entered against a party who does not
5  make a showing sufficient to establish the existence of an element essential to that party's case
6  and on which that party will bear the burden of proof at trial.  Id. at 322.

7  If the moving party meets its initial responsibility, the burden then shifts to the opposing
8  party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec.
9  Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); First Nat'l Bank v. Cities Serv.
10 Co., 391 U.S. 253, 288-289 (1968).  In attempting to establish the existence of this factual
11 dispute, the opposing party may not rely upon the denials of its pleadings, but is required to
12 tender evidence of specific facts in the form of affidavits and/or admissible discovery material in
13 support of its contention that the dispute exists.  Fed. R. Civ. P. 56(c).  The opposing party must
14 demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the
15 suit under the governing law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The
16 opposing party must also demonstrate that the dispute is genuine, i.e., the evidence is such that a
17 reasonable jury could return a verdict for the nonmoving party.  Id. at 251-52.

18 In the endeavor to establish the existence of a factual dispute, the opposing party need not
19 establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual
20 dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at
21 trial."  First Nat'l Bank, 391 U.S. at 289.  Thus, the "purpose of summary judgment is to 'pierce
22 the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"
23 Matsushita, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963
24 amendments).

25 In resolving the summary judgment motion, the court examines the pleadings, depositions,
26 answers to interrogatories, and admissions on file, together with the affidavits, if any.  Rule 56(c);
27 SEC v. Seaboard Corp., 677 F.2d 1301, 1305-06 (9th Cir. 1982).  The evidence of the opposing
28 party is to be believed, and all reasonable inferences that may be drawn from the facts placed

6

before the court must be drawn in favor of the opposing party. <u>Anderson</u>, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. <u>Richards v. Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), <u>aff'd</u>, 810 F.2d 898 (9th Cir. 1987).

Finally, to demonstrate a genuine issue that necessitates a trial, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita</u>, 475 U.S. at 586-87, 106 S. Ct. at 1356.

## ANALYSIS

In the instant case, both parties move for summary judgment on the sole and purely legal issue of whether the discretionary function exception to the FTCA applies to this case. Defendant's motion asserts that it is immune from liability under the exception because Defendant's conduct in this matter was discretionary. Plaintiffs maintain that Defendant is not immune because LAVO employees failed to follow mandatory policies set forth in the Park's Environmental Health and Safety Program.

**A.     Summary of Plaintiffs' Argument**

Plaintiffs cite an abundance of evidence consisting chiefly of deposition testimony from park employees that the retaining walls that ultimately caused Tommy Botell's death were unsafe and that LAVO employees knew of their deteriorating condition. (<u>See</u> generally UF 10-38.) Plaintiffs also cite deposition testimony that LAVO employees failed to comply with mandatory requirements set forth in the Park's safety program.  For example, failure to annually evaluate the park's inspection program and establish abatement dates in a written report. (<u>see</u> generally UF 61-97.)

Based on this evidence, Plaintiffs argue that the discretionary function exception to the FTCA does not apply. Specifically, Plaintiffs argue that the exception does not apply because the policies set forth in the safety program were mandatory, and thus, there was no discretion involved in the decision to not close or partially close a known hazard; said hazard being the retaining wall on the Lassen peak trail that admittedly caused Tommy Botell's death and K.B.'s

personal injuries.

B.     **Summary of Defendant's Argument**

Defendant, in its opposition and cross-motion for summary judgment, argues that the discretionary function is applicable, and therefore, the court lacks subject matter jurisdiction over Plaintiffs' claims. Specifically, Defendant argues that the complaint is based upon the following policy decisions: failure to properly maintain the trail; failure to close the trail; and failure to warn of the alleged dangers to the public associated with using the trail. (Def.'s Mot. For Summ. J., ECF 102-1 at 11:19-22.) Defendant argues that the LAVO safety policies did not contain mandatory policies, but rather "vest[ed] the Park Superintendent with discretion in determining how to address visitor safety issues." (Id. at 16:15-18.)

Defendant also cites Ninth Circuit law which holds that "decisions as to the precise manner in which [the National Park Service] would warn the public . . . clearly fall within the discretionary function exception. (Id. at 19:3-8 (quoting Childers v. United States, 40 F.3d 973 (9th Cir. 1994).) Defendant contends that the exception is applicable regardless of the safety program's mandates because superintendent Koontz had discretion to alter the safety program. (See Def.'s Reply, ECF 120 at 2:7-14.)   Indeed, at the hearing on the parties' motions, the thrust of Defendant's argument was that because Koontz had the authority to amend the program, any failure to act was inherently discretionary. Defendant also argued at the hearing that the safety program did not contain mandatory directives but rather was merely an employee handbook that provided guidance to LAVO staff. Therefore, Defendant maintains, any failure to follow the directives set forth in the program was discretionary.

C.     **Discretionary Function Analysis**[5]

The FTCA is a statutory waiver of the federal government's sovereign immunity. One exception to this waiver is the discretionary function exception, which concerns "[a]ny claim based upon an act or omission of an employee of the Government exercising due care, in the

---

[5] "The determination of whether a particular activity is a discretionary function is a question of law." Lesoeur v. United States, 858 F. Supp. 974, 976 (D. Ariz. 1992) (citing Garcia v. United States, 826 F.2d 806, 809 (9th Cir.1987)).

1  execution of a statute or regulation, . . . or based upon the exercise of performance or the failure
2  to exercise or perform a discretionary function or duty on the part of a federal agency or an
3  employee of the Government, whether or not the discretion involved be abused."
4  28 U.S.C. § 2680(a).  "The government bears the burden of proving that the discretionary
5  function exception applies."  Myers v. United States, 652 F.3d 1021, 1028 (9th Cir. 2011).
6  In determining whether the exception applies, the court follows a two-prong approach: the
7  court must determine "(1) whether the challenged actions involve an element of judgment or
8  choice; and (2) if a specific course of action is not specified, whether the discretion left to the
9  government is of the kind that the discretionary function was designed to shield, namely, actions
10  and decision based on considerations of public policy."  Id. at 1029.  Where there is a statute or
11  **policy** directing mandatory and specific action, the inquiry comes to an end because there can be
12  no element of discretion when an employee has no option but to adhere to the directive. Id.
13  The Ninth Circuit has explained that "[t]he danger that the discretionary function
14  exception will swallow the FTCA is especially great where the government takes on the role of a
15  private landowner. . . . [I]n order to effectuate Congress's intent to compensate individuals
16  harmed by government negligence, the FTCA, as a remedial statute, should be construed
17  liberally, and its exceptions should be read narrowly."  O'Toole v. United States, 295 F.3d 1029,
18  1037 (9th Cir. 2002).
19  Here, Defendant has failed to meet its burden of demonstrating that the discretionary
20  function exception to the FTCA is applicable.  The court therefore has subject matter jurisdiction
21  to entertain plaintiffs' claims.
22  First, while Defendant cites Ninth Circuit case law holding that failure to warn of known
23  dangers in national parks constitutes a discretionary function, it essentially ignores Defendant's
24  admitted failures to comply with concededly mandatory procedures set forth in LAVO's safety
25  program.  The mandatory procedures set forth in LAVO's safety program required documenting
26  all annual inspections and establishing all abatement dates in a written report.  Indeed,
27  superintendent Kootz admitted in her deposition that the policies set forth in the safety program
28  were mandatory, that they were not performed, and that park employees "weren't doing [their]

1  job." (Koontz Dep. at 123:21-124:19.)

2  Moreover, that Koontz had discretion to amend the safety program does not render its
3  directives discretionary. Koontz testified that these policies were mandatory and that they were
4  not followed. (See ECF 92 at 12:11-13:19; Koontz Dep. At 123:21-124:19; 128:7-129:13; 130:6-
5  15; 130:22-131:8.) John Roth, LAVO's collateral safety officer and co-author of the safety
6  policy, also testified that these policies were mandatory. (Roth Dep. at 33:3-9.) That Koontz
7  could alter the safety policies after the incident occurred has no bearing on whether or not its
8  directives were mandatory for park employees at the time the incident occurred.  Indeed,
9  Defendant cites no legal authority supporting the proposition that a government employee's
10 authority to alter, abrogate or amend a mandatory directive set forth in a safety program triggers
11 the discretionary function exception to the FTCA.

12 Defendant's argument that the purpose of the safety program was to merely serve as an
13 employee handbook is also a non-starter. LAVO's safety program specifically states that its
14 purpose is to "seek to prevent injuries to employees, protect property from damage, and **provide**
15 **for the safety of the public** . . . when using the facilities,". (ECF 92-8.) The name of the
16 document itself, Lassen Volcanic National Park Environmental Health and Safety Program, belies
17 Defendant's entire premise that the safety program was merely an employee handbook.  (Id.) As
18 stated numerous times herein, Koontz herself admitted that the program's safety directives were
19 mandatory and that they were not followed. In sum, the court finds unavailing Defendant's
20 argument that the discretionary function exception is applicable because the program was merely
21 an employee handbook.

22 Myers v. United States, 652 F.3d 1021 (9th Cir. 2011), supports the conclusion that the
23 discretionary function exception is inapplicable. In Myers, "[p]laintiffs [sought] damages from
24 the United States for injuries to a child allegedly caused by exposure to the toxic heavy metal
25 thallium from soil dumped into a landfill adjacent to the child's residence and school." Id. at
26 1023. Myers involved mandatory safety manual provisions similar to those in the safety program
27 in this case; directing that defendant in that case **shall** maintain for inspection a log of quality
28 assurance with approved work programs; **shall** ensure that programs are reviewed; and **shall**

1  review all health and safety programs. Id. at 1024. (emphasis added).  Defendant in Myers,
2  similar to Defendant herein, argued that the provisions set forth in the safety program were not
3  sufficiently specific requirements to divest defendant of its discretion, and thus, the discretionary
4  function exception was applicable.
5     The court ultimately found Defendant's position untenable.  Specifically, the court found
6  that the "[m]anual use[d] the unambiguously mandatory 'shall' in stating the requirement for
7  review of [health and safety programs]," thereby "leaving nothing to the [d]efendant's
8  discretion." Id. at 1029.  Therefore, the court held Defendant did not meet "its burden on the first
9  prong of the 'discretionary function' analysis, because the [m]anual did impose 'mandatory and
10 specific' requirements for review by" defendant. Id. at 1030.
11    Similar to the requirement of a mandatory review of the health and safety programs in
12 Myers, the safety program in the instant case utilized the unambiguously mandatory term **shall** in
13 setting forth the requirement that Defendant conduct "an evaluation of the overall [safety]
14 inspection program annually." (ECF 92-8.)  As such, "[b]ecause the [safety program] directed
15 mandatory and specific action, the inquiry comes to an end because there can be no element of
16 discretion when an employee has no rightful option but to adhere to the directive and the
17 discretionary function is inapplicable." Myers, 652 F.3d at 1030 (quoting Terbush v. United
18 States, 516 F.3d 1125, 1129 (9th Cir.2008)).  Myers, therefore, necessarily compels the
19 conclusion that the discretionary function exception is also inapplicable in this case.
20    Navarette v. United States, 500 F.3d 914 (9th Cir. 2007) is similarly illustrative.  In
21 Navarette, a camper who suffered injuries after falling off a cliff at a campground operated by the
22 Army Corps of Engineers sued the United States under the FTCA. Id. at 915.  The campground
23 was governed by a "safety program" similar to the program in the instant case which required that
24 "[d]angerous terrain conditions, such as drop-offs, etc, will be properly marked or fenced." Id. at
25 917.  The court held that "the Safety Program's instruction that [d]angerous terrain conditions,
26 such as drop-offs, etc, will be properly marked or fenced is sufficiently specific and mandatory to
27 create clear duties incumbent upon the governmental actors." Id. at 918 (citing Kennewick
28 Irrigation Dist. v. United States, 880 F.2d 1018, 1026 (9th Cir.1989)) (internal quotations

1  omitted).  As such, the court held that the discretionary function exception to the FTCA did not
2  apply.  Similarly, in the instant case, the language of the safety program governing LAVO was
3  sufficiently precise such that it created "clear duties incumbent upon the governmental actors,"
4  and thus, the discretionary function exception is inapplicable.  Kennewick Irrigation Dist., 880
5  F.2d at 1026.

6  The cases relied on by Defendant are inapposite.  Specifically, Defendant's reliance on
7  Childers v. United States, 40  F.3d 973 (9th Cir. 1994) and Blackburn v. United States, 100 F.3d
8  1426, 1430 (9th Cir. 1996) is misplaced.  Those cases both held that a government decision
9  whether or not to post warning signs at a national park for purposes of apprising the public of a
10  known hazard fell within the discretionary functions exception to the FTCA.  Those cases,
11  however, were strictly failure to warn cases.  This case, conversely, deals with other mandatory
12  conduct directed by LAVO's safety program that was admittedly not followed.  Specifically,
13  Defendant admits that it did not conduct a yearly review of its safety program, nor did Defendant
14  establish abatement dates in a written report.  As opposed to both Childers and Blackburn, in
15  which the Ninth Circuit found that the decision "whether to post signs or close trails require
16  significant discretion and judgment," the safety program in this case contained admittedly
17  mandatory directives.  Childers v. United States, 40 F.3d at 974.   Indeed, in Childers, there were
18  "no regulations or guidelines requir[ing] the Park Service to place warnings along a trail";
19  conversely, here, superintendent Koontz admitted in her deposition that defendant did not follow
20  mandatory directives set forth in the safety program.  Id.

21  Ultimately, the evidence proffered by the parties herein demonstrates that the safety
22  program mandated that "[f]acilities that are substandard and pose hazards to safety and/or health
23  **shall** be closed, partially closed, or use modified patterns pending correction."  (ECF 92-8.)  Even
24  though numerous employees knew of the dangerous conditions of the wall, it is undisputed
25  Defendant did not close, partially close or use modified patterns pending correction.  (See UF 10,
26  16-17, 22-38.)  Simply put, Defendant's argument that their failure to abate the known danger
27  was discretionary is unavailing because the park's safety program mandated the closure of known
28  dangers such as the retaining wall.  Based on the foregoing, the court finds that the safety

12

program constituted a **policy** directing mandatory and specific actions that were admittedly not followed.  Therefore, the inquiry comes to an end and the discretionary function is inapplicable. Myers, 652 F.3d at 1028.

## CONCLUSION

Based on the foregoing, Plaintiffs' motion is GRANTED and Defendant's motion is DENIED.

Dated:	July 30, 2013

Troy L. Nunley
United States District Judge